23-7924
*Gym Door Repairs v. Guardian Gym Equip.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of April, two thousand twenty-six.

PRESENT:

RICHARD C. WESLEY,
RICHARD J. SULLIVAN,
STEVEN J. MENASHI,
 *Circuit Judges.*

_____

GYM DOOR REPAIRS, INC., SAFEPATH
SYSTEMS LLC,

 *Plaintiffs-Appellees*,

 v.                                          No. 23-7924

GUARDIAN GYM EQUIPMENT, QAPALA
ENTERPRISES, INC., JAMES PETRIELLO,

*Defendants-Appellants*.

Total Gym Repairs, Inc., Young Equipment
Sales, Inc., Yes Service and Repairs
Corporation, Richard Young, Brian
Burke, Dennis Schwandtner, Tri–State
Folding Partitions, Inc., Peter Mucciolo,
Educational Data Services, Inc., New York
State Department of Education Office of
Facilities Planning, New York State School
Facilities Association, Nassau
BOCES, Bellmore Public Schools, New
York City Department of Education, School
Facilities Management Institute, Eastern
Suffolk BOCES, Carl Thurnau, Individually
and as Director of New York State
Department of Education Office of
Facilities Planning, Stephen Cole, Katharine
Cole, Kathleen Cole, JOHN/JANE 1–10
DOE(S),

*Defendants*.[*]

_____

| | |
|---|---|
| **For Defendants-Appellants:** | Philip Furgang, Furgang & Adwar, LLP, New York, NY. |
| **For Plaintiffs-Appellees:** | KATHERINE J. DANIELS, Katherine Daniels LLC, North Salem, NY. |

Appeal from a judgment of the United States District Court for the Southern

District of New York (John Koeltl, *Judge*).

_____

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

2

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 15, 2024 judgment of the district court is **AFFIRMED**.

Appellants Guardian Gym Equipment, Qapala Enterprises, Inc., and James Petriello (together, "Guardian") appeal from a judgment awarding them $56,285.00 in attorneys' fees and $17,626.61 in costs following the conclusion of their long-running legal dispute with Appellees Gym Door Repairs, Inc. and Safepath Systems LLC (together, "GDRI"). On appeal, Guardian contends that the district court abused its discretion by (1) reducing Guardian's counsel's hourly billing rates; (2) refusing to award attorneys' fees for post-summary-judgment briefing, including for "fees on fees" from time spent on the attorneys'-fee motion; and (3) reducing the requested fee award for excessive billing, vagueness, and block billing, as well as other "draconian and duplicative reductions." Guardian Br. at 40. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to resolve this appeal.

## I.    Background.

This appeal stems from a long-running dispute that began in 2009 when GDRI accused its competitors – including Guardian – of conspiring with New York authorities to rig the public procurement process for certain electronically operated doors in schools.   GDRI asserted that this conspiracy aimed "to retaliate against [it] for exposing" noncompliance with New York Education Law section 409-f, which requires the installation, maintenance, and safe operation of "electrically operated partitions, doors, or room dividers" in New York schools. N.Y. Educ. Law § 409-f.   GDRI also brought several intellectual-property claims against the same competitors.

After extensive litigation, the district court granted summary judgment to Guardian.   As relevant here, Guardian filed a motion for attorneys' fees in 2020, which the district court referred to a magistrate judge.   The district court ultimately accepted the magistrate judge's report and recommendation in full and entered final judgment in May 2024.   Guardian now asserts that the district court abused its discretion in reducing its attorneys' fees from a requested $688,286.00 to $56,285.00.

## II.     Standard of Review.

We review a district court's decision to award attorneys' fees for abuse of discretion.  *Manhattan Review LLC v. Yun*, 919 F.3d 149, 152 (2d Cir. 2019). "Given the district court's inherent institutional advantages in this area, our review of a district court's fee award is highly deferential."  *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).   "This high degree of deference is appropriate because we can hardly think of a sphere of judicial decision[-]making in which appellate micromanagement has less to recommend it."  *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019) (alteration adopted and internal quotation marks omitted).

To determine the amount of an award of attorneys' fees, a district court must calculate the "presumptively reasonable fee."  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).   Courts do so by using the lodestar method, "whereby an attorney[-]fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005) (alteration adopted and internal quotation marks omitted).   In making this calculation, courts should step "into the shoes of the reasonable, paying client, who wishes to pay the least

5

amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008). We also consider the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Lilly*, 934 F.3d at 228.[1] A court should exclude "excessive, redundant, or otherwise unnecessary" billed hours and "has discretion simply to deduct a reasonable percentage of the number of [surplus] hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). At all times, however, the primary goal of awarding attorneys' fees under fee-shifting statutes "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

## III. The District Court Did Not Abuse its Discretion in Reducing Guardian's Attorneys' Fee Award.

Guardian first contends that its requested hourly rate was "reasonable" and "far below the average rate for experienced intellectual[-]property litigators in this

---

[1] Those factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly*, 934 F.3d at 228 (internal quotation marks omitted) (citing *Johnson*, 488 F.2d at 717–19).

6

jurisdiction," rendering the district court's decision to reduce the requested rate "an egregious error." Guardian Br. at 27. We disagree.

When seeking attorneys' fees, the applicant bears the burden "to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The twelfth *Johnson* factor – "awards in similar cases" – also provides guidance in assessing the reasonableness of a requested rate. *Lilly*, 934 F.3d at 228 (internal quotation marks omitted).

Here, the district court reduced Guardian's requested rate to maintain consistency among defendants. The court noted that it had previously calculated $250 per hour as a reasonable rate for Guardian's co-defendant, Total Gym. It then explained that the same rate should apply to Guardian's fees because the two parties confronted "similar claims, filed the same motions, attended the same appearances, and did not face major departures on their litigation of the case." Guardian Sp. App'x at 35–36. Indeed, the court noted that Guardian's attorneys filed motions that expressly relied on Total Gym's attorneys' work. And when the magistrate judge asked Guardian to provide information regarding the ninth

7

*Johnson* factor – "the experience, reputation, and ability of the attorneys" – to assess the reasonableness of its hourly rate, Guardian did not do so. *Lilly*, 934 F.3d at 228 (internal quotation marks omitted). In light of these facts, and Guardian's failure "to produce satisfactory evidence" indicating *why* its attorneys deserved a higher rate, *Blum*, 465 U.S. at 896 n.11, we cannot say that the district court abused its discretion in awarding the same rate to the lawyers for both Guardian and Total Gym.

Guardian next challenges the district court's decision to exclude "all time records after October 30, 2018," the date on which the district court denied GDRI's motion for reconsideration of its decision granting summary judgment to Guardian. Guardian Br. at 27. But our caselaw makes clear that district courts have broad "authority and discretion" over fee awards, including the latitude to deny fees based on the filing of a motion for attorneys' fees, known as "fees on fees." *Lilly*, 934 F.3d at 235.

The district court refused to award attorneys' fees for "any time billed for work after October 30, 2018" because Guardian had already succeeded in having the claims against them dismissed. Dist. Ct. Doc. No. 1063 at 10. Thus, any subsequent work was primarily devoted to "obtaining a fee award," making it

"not reasonably compensable." *Id.* Though Guardian protests that its post-October 30 work included a "complicated motion for discovery and then discovery sanctions," Guardian Br. at 27, the vast majority of work billed during this period related to collecting attorneys' fees and stemmed from Guardian's own failure to submit accurate and reliable billing records. Compensating Guardian's attorneys for this time – given that their *own* "untimely submissions, incomplete responses, and outright errors" necessitated "numerous rounds of unnecessary briefing" – would perversely reward Guardian for its indolent litigation behavior. Guardian Sp. App'x at 46; *see also N.Y. St. Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("[T]he inordinate amount of time [movant's] attorneys spent on the fee application was a direct result of their failure to keep better records."). Based on the record before us, we find no abuse of discretion on the part of the district court. S*ee Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980).

Guardian also questions the district court's reductions based on what it regarded as excessive, vague, redundant, or block-billed time entries. Specifically, the court reduced Guardian's requested fee award by thirty-five percent for excessive billing, twenty percent for vagueness, fifteen percent for

9

block billing, and five percent for work that was clerical or administrative in nature – in all, a seventy-five percent total reduction. But while there is no doubt that the court decreased the award significantly, it "state[d] its reasons for doing so as specifically as possible," *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998) (internal quotation marks omitted), leading us to conclude once again that the district court did not abuse its discretion.

For starters, the district court stressed that Guardian's logged hours, "including time for fees on fees," amounted to "more than five times Total Gym's time sought," despite performing similar work. Guardian Sp. App'x at 46 (emphasis deleted); *see id.* at 14 (awarding Total Gym $91,810 in attorneys' fees for 478.25 hours of work), 36. The district court further noted that Guardian grossly inflated its estimated time. In one instance, a Guardian attorney billed over twenty-four hours in a single day. Another time, that attorney billed eleven hours for a hearing on June 7, 2016 that nowhere appeared on the district court's docket. Given Guardian's failure to keep contemporaneous time records, the district court was justified in finding that Guardian's billing records were "highly unreliable" and grossly inflated. Dist. Ct. Doc. No. 1063 at 9; *see Kirsch*, 148 F.3d at 173 ("Applications for fee awards should generally be documented by

10

contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.").

Guardian also billed excessive amounts of time for routine tasks. For example, one entry for four-and-a-half hours involved "considering a voicemail and writing an email." Guardian Sp. App'x at 47 (alteration adopted and internal quotation marks omitted). If the "key inquiry in determining the reasonableness of an attorney's hourly rate and hours billed is whether a paying client would be willing to pay the fee," *Lilly*, 934 F.3d at 234, we cannot say the district court abused its discretion in reducing the total number of hours billed by Guardian.

District courts may also reduce a fee request "for vagueness, inconsistencies, and other deficiencies in the billing records," since vague time entries prevent courts from separating compensable from non-compensable time, as well as from determining whether the amount of time expended was reasonable. *Kirsch*, 148 F.3d at 173 (affirming twenty-percent fee reduction). As the district court observed, Guardian provided scores of vague and indeterminate time entries that made it exceedingly difficult for the district court "to determine what legal services were actually rendered." Guardian Sp. App'x at 50. Scores of entries vaguely described time spent on various tasks without identifying the legal claims to which

11

they related. This made it difficult, if not impossible, for the district court to separate the hours worked on claims subject to fee shifting, like the intellectual-property-related claims, from those that were not, like the tortious-interference claim. When the magistrate judge directed Guardian to clarify its billing records, Guardian only partially complied – even after "a hearing and opportunities to supplement and provide more specificity." *Id.* at 50–51. Based on this record, we cannot say that a twenty-percent reduction for vague time entries was inappropriate.

Nor did the district court abuse its discretion in reducing the requested fee award by fifteen percent for block billing and five percent for attorney time spent on clerical and administrative tasks. Courts routinely "reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work)." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (alteration adopted and internal quotation marks omitted). Such block billing is "disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Id.*

12

The record reflects that Guardian frequently block billed its time, often blending clerical and legal work. To take one example, Guardian billed nearly four hours to a nearly stream-of-consciousness entry involving "multiple telephone conferences with Marie Delaney, [] the conference call with Katherine Daniels, Esq., and Philip Furgang, Esq., [] multiple e-mail exchanges with Katherine Daniels, Esq., [] conferences with Philip Furgang, Esq., regarding same and next steps,[] Westlaw research, [] considering and forwarding Marie Delaney 10 prior Safepath cases." Guardian Sp. App'x at 54. Such an entry undermined the district court's ability to conduct "a meaningful review of the hours for which counsel seeks reimbursement." *Raja*, 43 F.4th at 87 (internal quotation marks omitted). Other examples abound. *See, e.g.*, Guardian Sp. App'x at 52; *id.* at 54 n.59 (collecting examples). And our caselaw clearly supports fee reductions for "clerical tasks" such as filing documents, forwarding copies of documents, and requesting judicial transcripts. *See Lilly*, 934 F.3d at 234 (clerical tasks include "sending and receiving faxes," "serving papers, and hand-delivering courtesy copies of filings to the courthouse"). Given that the goal "is to do rough justice, not to achieve auditing perfection," *Fox*, 563 U.S. at 838, the district court did not

13

abuse its discretion in reducing Guardian's fee award for impermissible block billing and routine administrative tasks.

*      *      *

We have considered Guardian's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court